PARIENTE, Judge.
The appellants, Leila Salman (plaintiff) and her husband Kassim Salman, appeal the denial of a motion for a new trial in a negligence action where the jury found in favor of all defendants on the issue of liability. We find the verdict for the defendants to be against the manifest weight of the evidence, and accordingly reverse the order denying plaintiffs motion for a new trial.
Plaintiff Leila Salman, an innocent passenger, was the victim of an intersectional collision involving two vehicles. She sued her daughter Suzanne Salman (Suzanne), as operator of the vehicle in which she was a passenger, and Larry Jerome Baker (Baker), the operator of the second vehicle, alleging negligent operation by both defendants. She also sued Foreign Cars Continental, Inc. (Foreign Cars), who had lent Suzanne the vehicle for a test drive so that she could decide whether to purchase it, and the vehicle’s owner, Betty Cooper (Cooper). Both Foreign Cars and Cooper were sued solely for vicarious liability based on Suzanne’s negligence.
The collision occurred at 7:00 p.m. as Suzanne made a left hand turn at the intersection of Federal Highway and Hillsboro Boulevard in Deerfield Beach. Although Suzanne had observed a green arrow before she began the turn on to Hillsboro Boulevard, she did not continue to observe the light as she was making her left hand turn. When in the intersection, Suzanne’s vehicle was struck by Baker’s vehicle. Baker was driving northbound on Federal Highway. According to Baker, the light turned to full green as he approached-the intersection and he proceeded through the intersection at a speed in excess of 40 miles per hour. The one independent witness, who was traveling northbound on Federal Highway in the same direction as Baker, testified in part that:
[I]t seemed to me that the light turned green for us to go and the next thing I knew this person' tried to — that turning vehicle tried to get in, you know, go through before the oncoming cars started to move.
And I guess somebody going northbound must have got a quick jump on the light, because the minute they tried to turn, man, they were hit. It was pretty spontaneous.
Baker testified that there was construction in the vicinity of the intersection. However, there were no obstructions to his vision or evidence that the construction created confusion at the intersection. There was no testimony or evidence introduced at trial that the traffic lights malfunctioned or that the sequencing of the lights was improper. Nevertheless Baker’s attorney remarked in closing argument that:
And this is one case where neither Mr. Baker nor Ms. Salman were at fault. I think the evidence is that neither one was at fault. If anybody was at fault here, it was the city or the county or whoever in the world was doing the construction there that day that didn’t put the right barricades up, didn’t have the right sequence on the traffic light, did not have a delay between the green arrow and the green light because this is how this accident happened.
The defendants now argue in this appeal that the jury could have properly found in favor of both defendants based on the doctrine of unavoidable accident. They further argue that because of the construction, the traffic lights might have malfunctioned; and therefore, the jury could have found that Suzanne had the green arrow while Baker had the green light with neither defendant at fault.
For the jury to have determined that the traffic lights malfunctioned, without any evidence of this fact, would require the jury to *572 engage in impermissible speculation. Fla. Std.Jury Instr. (Civ.) 2.1; Florala Sawmill Co. v. Smith, 55 Fla. 447, 46 So. 332 (Fla.1908). An inference that the traffic lights may have malfunctioned because of the isolated fact that there was construction in the area does not logically follow. Baker makes the alternative argument that the jury could have found that Baker had the green light while Suzanne had the green arrow, and therefore, inferred that the traffic lights malfunctioned. However, Suzanne testified that she did not continue to observe the light as she made her turn. It is more likely that she no longer had a green arrow. To infer that the traffic lights malfunctioned would constitute an impermissible pyramiding of inferences. See Voelker v. Combined Ins. Co. of America, 73 So.2d 403 (Fla.1954); Hurst v. Astudillo, 631 So.2d 380 (Fla. 3d DCA 1994). Moreover, even if one driver had a green arrow and the other had a green light, each defendant still had the responsibility to exercise due care and to abide by the applicable traffic regulations.
Simply having a green light did not entitle Baker to enter the intersection with impunity. Construction in the area would require him to exercise more care under the circumstances, not less. Pursuant to section 316.-075(l)(a), Florida Statutes (1993), a vehicle with a green light may “proceed cautiously” through the intersection, but is required to yield the right-of-way “to other vehicles and to pedestrians lawfully within the intersection.” The court in U.S. Fire Insurance Co. v. Progressive Casualty Insurance Co., 362 So.2d 414, 415 (Fla. 2d DCA 1978), stated:
A motorist about to enter an intersection with the traffic signal in his favor has the right of way. He also has a right to assume others will obey the law and exercise due care to avoid an accident. However, even though he has a favorable light he must exercise reasonable care to determine that there is no impending traffic which would impede safe passage through the intersection. He has not exercised reasonable care once he knows or should have known that another motorist is going to run a red light and has a clear opportunity to avoid the collision. [Emphasis in original. Citations omitted.]
Likewise, whether Suzanne had a green arrow or a green light, she must proceed cautiously through the intersection. Section 316.075(l)(b) states that a driver with a green arrow “may cautiously enter the intersection,” but is required to yield the right-of-way to, inter alia, “other traffic lawfully using the intersection.” Additionally, section 316.122, Florida Statutes (1993) provides that a driver making a left-hand turn “shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard.” That statute was construed in the following manner by the court in Weeks v. Ranson, 419 So.2d 722, 724 (Fla. 5th DCA 1982):
At best, left-turning vehicles moving with a green arrow must exercise caution and good judgment § 316.075(l)(b), Fla. Stat. (1981). Green arrows are no insurers of a turning vehicle’s safety. A driver cannot pull out into the path of an oncoming car when he or she could have avoided the accident by not making the turn.
The jury here was instructed on all of the above statutes.
We reject the defendants’ contention that the jury could have properly found that this intersectional collision was an unavoidable accident. The doctrine of unavoidable accident is applicable “only when, under some theory of the case, the injury does not result from the negligence of either party.” Kasper Instruments, Inc. v. Maurice, 394 So.2d 1125, 1127 (Fla. 4th DCA 1981). While rejecting unavoidable accident as a separate affirmative defense, the second district in Tropical Exterminators, Inc. v. Murray, 171 So.2d 432, 433-34 (Fla. 2d DCA), cert. denied, 177 So.2d 475 (Fla.1965) attempted to define the term:
The phrase “unavoidable accident”, as related to the question of liability in tort actions involving damages to person or property, is somewhat of a misnomer. When a casualty occurs as a result of matters beyond the knowledge, actual or implied, of the person charged, and over which he has no control, he is relieved of *573 liability for the simple reason that he is not guilty of actionable negligence; otherwise stated, the element of proximate cause is lacking because there is no causal connection between his action and the damages sustained.
See also Smith v. Canevary, 553 So.2d 1312, 1315 (Fla. 3d DCA 1989). However, common to all the definitions is the concept that the defendants are free from fault in causing the accident:
An unavoidable accident is one which occurs while all persons concerned are exercising ordinary care, that is, one not caused by the fault of any of the persons; if the accident producing the injury could have been prevented by either person by means suggested by common prudence it is not deemed unavoidable.
Retty v. Troy, 188 So.2d 568 (Fla. 2d DCA 1966), cert. denied, 200 So.2d 814 (Fla.1967). See also Scott v. Barfield, 202 So.2d 591 (Fla. 4th DCA 1967).
In this case the plaintiff was an innocent passenger undisputedly free of any negligence. All of the parties responsible for this accident were joined in the lawsuit. None of the defendants requested that either the construction company or the governmental agency responsible for the traffic signalization be joined as a party or placed on the verdict form. There was no evidence that the accident, which caused the plaintiffs injury, was unavoidable or that the accident occurred as a result of intervening causes or reasons other than the negligence of one or more of the defendants. Under these circumstances, a directed verdict in favor of the plaintiff and against multiple defendants would have been permissible. See Davis v. Sobik’s Sandwich Shops, Inc., 351 So.2d 17 (Fla.1977); New Deal Cab Co. v. Stubbs, 90 So.2d 614 (Fla.1956). The reasoning of the supreme court in New Deal Cab and Davis v. Sobik’s Sandwich Shops is equally compelling here:
No third persons intervened to cause or contribute to the accident. There is nothing in the record to suggest that the collision was an “unavoidable accident,” and there was evidence from which the jury could have found either or both of the defendants to be negligent.
Davis v. Sobik’s Sandwich Shops, 351 So.2d at 19, citing New Deal Cab, 90 So.2d at 615.
Certainly if a directed verdict in favor of the plaintiff and against one or more of the defendants would have been proper, the failure of the jury to find one or more of the defendants at fault would a fortiori be against the manifest weight of the evidence. As stated in New Deal Cab:
Where the entire evidence is of such probative force that the trial court, to give effect to the manifest weight of the evidence and the justice of the cause, should properly have granted a new trial if a verdict had been rendered for the defendant, the trial court will not be held in error for directing a verdict for the plaintiff.
90 So.2d at 615. The verdict in this intersec-tional collision in favor of two potentially at-fault defendants is decidedly against the manifest weight of the evidence.
Accordingly, the order denying the motion for new trial is reversed and this cause is remanded for a new trial.
REVERSED AND REMANDED.
GLICKSTEIN and FARMER, JJ., concur.